O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOUNG MONEY ENTERTAINMENT, LLC; YOUNG MONEY PUBLISHING, INC; and DWAYNE MICHAEL CARTER, JR., <br><br>  Plaintiffs, <br>  v. <br><br> DIGERATI HOLDINGS, LLC; QD3 ENTERTAINMENT, INC.; QUINCY DELIGHT JONES III; JOSHUA A. KRAUSE; JARED FREEDMAN; and DOES 1–10, inclusive, <br><br>  Defendants. | Case No. 2:12-cv-07663-ODW(JCx) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT JOSHUA KRAUSE'S MOTION TO DISMISS [12]** |

## I.   INTRODUCTION

Young Money Entertainment LLC; Young Money Publishing, Inc.; and Dwayne Michael Carter, Jr. (commonly known by his stage name, Lil Wayne) (collectively "Young Money") bring suit for (1) copyright infringement; (2) contributory copyright infringement; (3) unfair competition; and (4) accounting. Defendant Joshua A. Krause moves to dismiss the claims under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), or in the alternative to strike under 12(f).  Having carefully considered the papers filed in support of and in opposition to the instant Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local R. 7-15.  For the reasons discussed below, Krause's motion is **GRANTED in part** and **DENIED in part**.

## II. FACTUAL BACKGROUND

In 2007, Defendants (including Krause) began working on a documentary film about Carter's stage persona as Lil Wayne titled *The Carter*, which was ultimately released in 2009. (FAC ¶ 14.) During the production process, Defendants decided to use several copyrighted works from Carter's album *Tha Carter III* in the film. (FAC ¶ 15.) Young Money alleges that Defendants never obtained authorization to use the following *Tha Carter III* works in the film: (1) "Mr. Carter"; (2) "La La"; (3) "Stuntin' Like My Daddy"; (4) "Lollipop"; (5) "Let the Beat Build"; (6) "Pussy Monster"; (7) "A Milli"; and (8) "Dontgetit." (FAC ¶¶ 16–17.)

Young Money alleges that Defendants began distributing the film in late 2010 and continue to do so today. (FAC ¶ 18.) Defendants utilized numerous national and international commercial channels to distribute *The Carter*, including iTunes and Amazon. (*Id.*) Young Money further alleges the film was shown in numerous locations, including in Venice, California, in the spring of 2012. (*Id.*)

Young Money contends that while Defendants were allegedly informed that including music from *Tha Carter III* was not authorized, Defendants facilitated, approved, organized, and ensured infringing use of the works anyway. (FAC ¶¶ 24–25.) Krause helped to market, distribute, produce, and screen the film. (FAC ¶ 26.)

On March 29, 2009, Young Money Entertainment and Carter filed suit in Los Angeles Superior Court against Digerati Holdings, LLC; QD3 Entertainment, Inc.; and Quincy Delight Jones III for breach of contract and other claims related to the release and distribution of *The Carter*. (RJN Ex. A (the "State Complaint").) At issue in this action was an agreement Digerati entered into with Carter and Young Money, whereby (among other things) Carter would provide various services, photos, and videos for use in connection with *The Carter*. (*Id.* ¶ 18.) Under this agreement, Carter held the right to object to and give final approval for any content or scenes that depicted activities that are criminal in nature. (*Id.* ¶ 21.)

/ / /

The State Complaint alleged that before the film was released, Carter exercised his right under the agreement to object to selected content that portrayed him in a negative light. (*Id.* ¶¶ 23–24.) The complaint also set forth specific dates and locations where the film was shown in early 2009 without Carter's final approval. (*Id.* ¶ 27.) Judgment on a jury verdict in Defendants' favor was entered in this action on November 8, 2012.

On April 28, 2010, Lavell Crump, Darius Harrison, and the Royalty Network sued QD3 Entertainment and Virgil Films and Entertainment, LLC in the Southern District of New York for using three of the copyrighted musical compositions in *Tha Carter III* at issue here: "Pussy Monster," "La La," and "Lollipop." (RJN Ex. B.) On February 8, 2011, the District Court for the Southern District of New York held on summary judgment that Carter (not a party to the action, but nevertheless a co-owner of the copyrighted works), had granted the *Crump* defendants a valid, non-exclusive license to use the musical compositions in the film, and thus the co-owner plaintiffs in the action were barred from suing for infringement. *Crump v. QD3 Entm't, Inc.*, No. 10 civ. 3564, 2011 WL 446296, at *5 (S.D.N.Y. Feb 8., 2011).

On September 6, 2012, Young Money and Carter filed a copyright-infringement action before this Court against Digerati Holdings, QD3 Entertainment, Quincy Delight Jones III, Joshua A. Krause, and Jared Freedman. (ECF No. 1.) On October 16, Carter filed a First Amended Complaint, adding Young Money Publishing, Inc., as a party. (ECF No. 27.) Krause now moves to dismiss the First Amended Complaint.[1]

///
///

---

[1] Krause originally moved to dismiss the original Complaint on October 3, 2012. (ECF No. 12.) Young Money filed the First Amended Complaint as a matter of course under Rule 15(a)(1)(B) on October 16, 2012. (ECF No. 27.) Because the FAC only adds a Plaintiff without changing any of the factual contentions contained in the Complaint, the Court construes Krause's Motion as moving to dismiss the FAC.

### III. LEGAL STANDARD

Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement—to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); Fed. R. Civ. P. 8(a)(2). For a complaint to sufficiently state a claim, its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While specific facts are not necessary so long as the complaint gives the defendant fair notice of the claim and the grounds upon which the claim rests, a complaint must nevertheless "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Iqbal*'s plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," but does not go so far as to impose a "probability requirement." *Id.* Rule 8 demands more than a complaint that is merely consistent with a defendant's liability—labels and conclusions, or formulaic recitals of the elements of a cause of action do not suffice. *Id.* Instead, the complaint must allege sufficient underlying facts to provide fair notice and enable the defendant to defend itself effectively. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 566 U.S. at 679.

When considering a Rule 12(b)(6) motion, a court is generally limited to the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable to [the plaintiff]." *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). Conclusory allegations, unwarranted deductions of

fact, and unreasonable inferences need not be blindly accepted as true by the court. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Yet, a complaint should be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts" supporting plaintiff's claim for relief. *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV. DISCUSSION

Krause moves to dismiss Young Money's First Amended Complaint on grounds that (1) Young Money's claims are barred by issue and claim preclusion; (2) the statute of limitations have expired on Young Money's copyright claims; and (3) Young Money's claim for violation of California's Unfair Competition Law ("UCL") and request for an accounting are preempted by the Copyright Act. Because the determination of whether certain documents are judicially noticeable—a point the parties hotly contest—factors into the Court's disposition on the motion to dismiss, the Court first considers whether documents presented by Krause in his request are proper for judicial notice. Following that discussion, the Court evaluates the merits of Krause's motion to dismiss Young Money's four claims.

### A. Krause's Request for Judicial Notice

Young Money opposes Krause's request that the Court take judicial notice of four items: (1) the State Complaint filed in Los Angeles Superior Court; (2) the complaint filed in the *Crump* litigation in the Southern District of New York; (3) the Declaration of Quincy Delight Jones III ("Jones Declaration") filed in the *Crump*

/ / /

litigation; and (4) the summary-judgment order issued in *Crump*. (ECF No. 24 at 4–6.)

As a general rule, a district court may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). There are two exceptions to this well-established doctrine: (1) material that is properly submitted as part of the complaint; and (2) matters of public record, of which the Court may take judicial notice under Federal Rule of Evidence 201. *Id.* at 688–89. Documents not physically attached to the complaint may be considered if their authenticity is uncontested and the plaintiff's complaint necessarily relies on them. *Id.* at 688.

Under Rule 201, a court may judicially notice a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice of a filing before another court is limited to recognition that the filing exists—the very *fact* of the filing—which is not subject to a reasonable dispute. *Lee*, 250 F.3d at 690. But the disputed facts contained within the filing and the factual determinations by a judge in another case "ordinarily are not admissible for their truth in another case through judicial notice." *Wyatt v. Terhune*, 315 F.3d 1108, 1114 n.5 (9th Cir. 2003); *Lee*, 250 F.3d at 690.

Krause seeks judicial notice of the Sate Complaint to establish the dates on which *The Carter* was publicly exhibited in early January 2009. Young Money contests Krause's request insofar as it seeks judicial notice of the State Complaint for the truth of the factual allegations asserted therein. (ECF No. 24 at 4–5.) While Young Money's objections border on absurd in light of the fact that the parties and general subject matter of the State Complaint (which was filed by the exact same plaintiffs in this action) are identical to those in this action, the Court nevertheless may not judicially notice the facts contained within the State Complaint. *Lee*, 250

F.3d at 690; *Wyatt*, 315 F.3d at 1114 n.5. The Court therefore declines to judicially notice the State Complaint beyond its mere existence.

Young Money also challenges Krause's request that the Court take judicial notice of the *Crump* complaint to establish that Crump and Harrison (two of the plaintiffs in *Crump*) are joint authors of some of the works at issue here. (ECF No. 24 at 4–5.) For the reasons discussed above, Young Money's objections are well-founded.[2] The Court therefore takes judicial notice of the existence of the *Crump* complaint, but does not take notice of the allegations it contains.

Young Money argues next that the Jones Declaration and its attachments are not the proper subject of judicial notice. (ECF No. 24 at 5–6.) Krause seeks judicial notice of the Jones Declaration and its attachments for their discussion of the agreement between Carter and QD3 Entertainment governing the *The Carter*. (*See* Mot. 5.) The Court may not take judicial notice of a fact that is subject to reasonable dispute simply because it is filed as a public record or contained within another document that is the proper subject of judicial notice. *Lauter*, 642 F. Supp. 2d at 1077. The Court therefore recognizes the existence of the Jones Declaration and attachments, but does not consider any of the facts therein because they are subject to reasonable dispute. *See id.*; (ECF No. 24 at 5–6 (disputing facts contained with the Jones Declaration and noting they contradict allegations made in the Complaint).) Further, the Court cannot judicially notice the agreement because the document is not a public record. Therefore, the Court judicially notices that the Jones Declaration and its attachments were filed in *Crump*, but does not take notice of their contents.

Finally, Young Money argues the Southern District of New York's summary-judgment order in *Crump* is not the proper subject of judicial notice. But the Ninth

---

[2] But the Court again notes the petty nature of Young Money's objection on this point, as the Certificates of Registration establishing authorship in the works are also before the Court. These documents are public records and not subject to a reasonable dispute as to their authenticity. Because Young Money does not contest judicial notice of the certificates, the Court takes notice of these documents. (RJN Ex. E–L); *see Gilbrook v. City of Westminster*, 177 F.3d 839, 858 (9th Cir. 1999).

1  Circuit recognizes the need for courts to judicially notice prior judgments of other
2  courts to determine whether collateral estoppel applies. *Holder v. Holder*, 305 F.3d
3  854, 866 (9th Cir. 2002). The Court finds it appropriate to extend this reasoning to
4  claim preclusion, as well. Therefore, the Court must necessarily consider the
5  substance of the *Crump* summary-judgment order insofar as it bears upon Krause's
6  issue- and claim-preclusion arguments.

7  In sum, the Court takes judicial notice of the existence of the State Complaint,
8  the *Crump* complaint, and the Jones Declaration, but not the allegations therein. The
9  Court declines to judicially notice any of the attachments to the Jones Declaration.
10 The Court does, however, take judicial notice of the Certificates of Registration and
11 the summary-judgment order in *Crump* for the limited purpose of evaluating whether
12 issue and claim preclusion apply to this suit.

13 **B.  Collateral Estoppel**

14 On the merits, Krause first contends that Young Money improperly seeks to re-
15 litigate claims that were already decided by the Southern District of New York in
16 *Crump* and are therefore barred by the doctrines of collateral estoppel (issue
17 preclusion) and res judicata (claim preclusion).

18 Collateral estoppel precludes the retrying of an issue previously determined by
19 a "valid and final judgment." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). The
20 doctrine of collateral estoppel both "protect[s] litigants from the burden of relitigating
21 an identical issue with the same party or his privy and promot[es] judicial economy."
22 *Parklane Hosiery Co. v. Shore*, 439 U.S. 332, 326 (1979).

23 When applying collateral estoppel to cases arising under California or federal
24 law,[3] courts must find that (1) the issue decided in the previous proceeding is identical

---

[3] "For judgments in federal-question cases . . . federal courts participate in developing uniform federal rules of res judicata . . . ." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) (internal quotation marks and alterations omitted). In contrast, "[f]or judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." *Id.* n.4. The standard for collateral estoppel that the Court sets out here applies with equal force to federal-

to the current issue; (2) there was final judgment on the merits in the first proceeding; and (3) the party seeking to relitigate the issue was a party or privy to the first proceeding. *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000) (quoting *Younan v. Caruso*, 51 Cal. App. 4th 401, 406–07 (1996)). When a party asserts preclusion, it bears the burden of demonstrating "with clarity and certainty" the issue was decided by the prior judgment. *Offshore Sportswear, Inc. v. Vuarnet Int'l, B.V.*, 114 F.3d 848, 850 (9th Cir. 1997).

Generally, a non-party to a suit "has not had a full and fair opportunity to litigate the claims and issues" decided in a prior suit. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (internal quotation marks omitted). Well-established traditions support the notion that "everyone should have his own day in court." *Roberts v. Jefferson Cnty.*, 517 U.S. 793, 798 (1996). But this rule is subject to exceptions through which a non-party to a prior action may nevertheless be precluded from asserting an identical issue previously determined by a final valid judgment on the merits. *Taylor*, 553 U.S. at 893.

The Supreme Court recognizes six scenarios where nonparty preclusion is acceptable: (1) a nonparty agrees to be bound by the determination of issues in another proceeding; (2) a substantive legal relationship exists, binding the parties (traditional privity); (3) adequate representation by a party to the suit holding the same interests as a nonparty; (4) a nonparty assumes control of the litigation in which that judgment was rendered; (5) a nonparty to previous litigation brings suit as "the designated representative" of a party to the prior action; or (6) a special statutory scheme "expressly foreclos[es] successive litigation by nonlitigants." *Taylor*, 553 U.S. at 893–95.

Here, Krause argues that Carter is collaterally estopped by the *Crump* decision from asserting his claims in this action because a substantive legal relationship exists

---

question cases and diversity-of-citizenship cases where the Court must apply California law. *See Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000).

1  to bind the parties (traditional privity) and because Carter was adequately represented
2  in the prior suit. In their Opposition, Plaintiffs challenge only the third prong of the
3  collateral-estoppel test—that Carter is in privity with the *Crump* plaintiffs. (Opp'n 3.)
4  Thus, the Court assumes without deciding that the first two prongs of issue
5  preclusion—identity of issues and a final judgment on the merits—have been
6  established and examines only whether Krause has established that Carter is in privity
7  with the *Crump* plaintiffs through one of the six categories above.

        *1.*     *Privity between co-owners to a copyrighted work*

9          Krause first argues privity is created by the substantive legal relationship
10 between the *Crump* plaintiffs and Carter because they are co-owners to a copyrighted
11 work. Traditionally, privity "[arises] from a limited number of legal relationships in
12 which two parties have identical or transferred rights" including "co-owners . . . of
13 property." *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1053 (2005). When
14 a work is the product of joint authorship, each co-author automatically holds an
15 undivided interest in the whole. *Pye v. Mitchell*, 574 F.2d 476, 480 (9th Cir. 1978);
16 17 U.S.C. § 201(a) ("The authors of a joint work are coowners of copyright in the
17 work.").
18         In order to properly apply collateral estoppel to bar this action, the Court must
19 find that co-owners of a copyright are in privity. Krause asks the Court to create a
20 new legal principle to do so, that is, to find privity between co-authors of a
21 copyrighted work. Whether co-owners of a copyright can be held in privity for
22 purposes of collateral estoppel and res judicata is thus a matter of first impression for
23 this Court.
24         Co-owners in copyright cannot be liable to each other for infringement, and
25 each co-owner holds an independent right to use or license the work, subject only to
26 accounting by co-owners. *Oddo v. Ries*, 743 F.2d 630, 632–33 (9th Cir. 1984). Thus,
27 co-owners in copyright are generally considered similar to tenants in common. *Cmty.*
28 *for Creative Non-Violence v. Reid*, 846 F.2d 1485, 1498 (D.C. Cir. 1988). But

typically a tenancy in common does not create privity sufficient to make a judgment "for or against one operate as an estoppel for or against others." 40A Cal. Jur. 3d Judgments § 231 (2006).

Co-owners in copyright have a duty to account to one another for profits derived from the use of that copyright. *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996). If one tenant in common licenses the copyright to a third party, the other tenant in common can seek the profits from the licensor. *Id.* Krause contends that because co-owners can seek the profits of a suit in an action for accounting, if they lose, another co-owner is barred from bringing suit. (ECF No. 33 at 4–5.) The Court rejects this argument.

In *Davis v. Blige*, the Second Circuit considered whether a co-owner of a copyright could retroactively convey his copyright interest to a third party as a means to defeat a claim of copyright infringement against that third party by another co-owner. 505 F.3d 90, 97–98, 101 (2d Cir. 2007). The court explained that the right to prosecute an accrued cause of action for infringement is a right bestowed by copyright ownership. *Id.* at 99. A co-owner can exercise this right independently of other co-owners and is not required to join the co-owners as parties. *Id.* (citing 17 U.S.C. § 501(b)). Drawing on general principles of property law, the Second Circuit further noted that a co-owner in copyright may not transfer "more than he owns," *id.*, and thus found that "a co-owner who purports to convey not only his right to prosecute past infringements violates the basic rule that an owner cannot convey more than he owns." *Id.* at 103. And the same is true in the context of settlements: a settlement agreement "can only waive or extinguish claims held by a settling owner; it can have no effect on co-owners who are not parties to the settlement agreement. *Id.* at 102. The court therefore concluded that by retroactively transferring ownership interest, the transferring co-owner was taking away the accrued interest of another, thereby transferring more than he had. *Id.* at 97–98.

///

The Court finds the reasoning in *Davis* persuasive and applicable here by analogy. Here, at least one co-owner of a copyrighted work, Darius Harrison, sued a purported infringer in Federal District Court in New York. (RJN Ex. D.) The suit concerned whether Digerati Holdings and others committed copyright infringement by including works in *The Carter* co-authored by the plaintiffs. (RJN Ex. D.) In its decision, the New York court evaluated an agreement between Carter and the defendants and determined that the agreement granted a non-exclusive license to use the works in the film. Krause contends that the New York suit acts to collaterally estop Carter in the current action.

But as the court in *Davis* reasoned, a co-owner in copyright may not transfer away more rights than he holds or enter into a settlement that binds other owners. 505 F.3d at 99, 102. Applying collateral estoppel here would effectively allow one co-owner to rob another co-owner's own right to sue for an accrued cause of action by being the first to the courthouse steps. The Court therefore finds it improper to conclude the co-owners in the copyrighted works at issue here had a substantive legal relationship creating traditional privity for purposes of collateral estoppel. As a result, the Court **DENIES** Krause's motion to dismiss for collateral estoppel insofar as it relies on traditional privity to establish nonparty preclusion.

  *2.    Adequate representation and privity*

Krause argues next that nonparty preclusion is proper because Carter was adequately represented in the prior action. (Mot. 10–12.) The Supreme Court has narrowly defined what adequate representation means in the context of nonparty preclusion and privity. *See Taylor*, 553 U.S. at 894. Specifically, the Supreme Court has noted that a preclusive effect on the basis of adequate representation can be established through "properly conducted class actions and suits brought by trustees, guardians, and other fiduciaries." *Id.* (citations omitted). The current action does not fall into either grouping, as Carter was not represented in a prior class action, nor did the *Crump* plaintiffs act as trustees guardians or other fiduciaries by virtue of the co-

ownership right in the copyrighted works. And while the Supreme Court's list of adequate-representation scenarios in *Tyler* was non-exclusive, the Court finds that this particular action does not qualify as the type properly included in such a narrowly defined class of cases, as there were no special procedural or legal safeguards in the *Crump* action to ensure adequate representation (such as those provided by Federal Rule of Civil Procedure 23 or by fiduciary duties). Therefore, the Court **DENIES** Krause's motion to dismiss for collateral estoppel insofar as it relies on adequate representation to establish nonparty preclusion.

While the copyright-infringement issue may have been litigated and determined by a final judgment, the Court does not find privity existed between the co-owners of the copyrighted works. Accordingly, the Court **DENIES** Krause's motion to dismiss on collateral-estoppel grounds.

### C. Res Judicata

Res judicata prevents relitigation of the same cause of action between the same parties or their privies. *Headwaters Inc.*, 399 F.3d at 1051–52. It is undisputed that the parties in this suit are not the same as the parties in the *Crump* litigation. *See* RJN Ex. D; *cf.* FAC at 1. For the reasons discussed above, the parties are not in privity. Therefore, res judicata does not apply to bar the action. The Court therefore **DENIES** Krause's motion to dismiss under the doctrine of res judicata.

### D. Statute of Limitations

Krause contends next that this action is barred by a three-year statute of limitations. Krause directs the Court's attention to *Roley v. New World Pictures, Ltd.*, 19 F.3d 479 (9th Cir. 1994). In *Roley*, the Ninth Circuit found that "in a case of continuing copyright infringements, an action may be brought for all acts that accrued within the three years preceding the filing of the suit." *Id.* at 481. Because the First Amended Complaint alleges ongoing or "continuing" violations, the suit is not barred entirely by the statute of limitations. Nevertheless, Plaintiffs' recovery will be strictly limited to the harm they have suffered as the result of Defendant's wrongful activity

after September 6, 2009 (three years prior to the date this action was filed). Accordingly, Krause's motion to dismiss on statute of limitations groundsis **DENIED**.

**E.     Preemption**

Finally, Krause argues Young Money's claims for violation of California Business and Professions Code section 17200 and for an accounting are preempted by federal copyright law. (Mot.18–19.) "Preemption analysis involves determining whether the state law claim contains an element not shared by the federal law." *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1439–40 (9th Cir. 1993). State-law claims are preempted by the Copyright Act if: (1) the rights protected under state law are equivalent to those under the Copyright Act; and (2) the work is the proper subject of the Copyright Act under 17 U.S.C. §§ 102, 103. *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998).

In *Kodadek*, the Ninth Circuit considered whether section 17200 claims were preempted by the Copyright Act. 152 F.3d at 1212–13. The court looked to the plaintiff's complaint to determine which rights the plaintiff sought to enforce through state law and noted that the pertinent paragraphs describing defendants' alleged unfair competition incorporated by reference the paragraphs describing the plaintiff's copyright-infringement claim. *Id.* The Ninth Circuit therefore held that the section 17200 claims were preempted by the Copyright Act because the plaintiff "expressly base[d] his unfair competition claim on [equivalent] rights granted by the Copyright Act" *Id.*

Because the musical compositions at issue here fall within the purview of the Copyright Act, the second preemption element (that the works are subject to the Copyright Act) is satisfied. *See* 17 U.S.C. § 102(a)(2), (7). With respect to the first element of preemption, Plaintiffs include no new or different allegations in their unfair-competition claim that they do not include in their copyright-infringement claim. Instead, the First Amended Complaint simply incorporates by reference the paragraphs describing copyright infringement as the basis for his section 17200 claim.

(Compl. ¶¶ 27–29.)  Accordingly, under the reasoning in *Kodadek*, this Court finds Young Money's unfair-competition claims are preempted because the First Amended Complaint expressly bases the claims on equivalent rights granted by the Copyright Act.  Moreover, while the elements of a section 17200 claim and a copyright claim do not precisely overlap, the Court discerns no qualitative difference between the remedies afforded by Young Money's UCL claim and its copyright claim.  *See Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp 2d 1083, 1091–92 (N.D. Cal. 2008).  The Court therefore finds that any attempt to amend the UCL claim to avoid preemption would be futile and declines to grant leave to amend.  *Schreiber*, 806 F.2d at 1401.

For similar reasons, Young Money's claim for accounting is also preempted.  Young Money contends an accounting is necessary because "[t]he amount of money due to Plaintiffs from Defendants is unknown to Plaintiffs, and cannot be ascertained without an accounting from Defendants."  (FAC ¶ 32.)  But the Copyright Act already affords Young Money an adequate means by which to calculate damages in this action.  *See* 17 U.S.C. § 504.  Thus, Court likewise finds Young Money's accounting claim preempted by the Copyright Act.

The Court therefore **GRANTS** Krause's motion to dismiss insofar as it relates to the state law claims for unfair competition and accounting **WITHOUT LEAVE TO AMEND**.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS in part** and **DENIES in part** Krause's Motion to Dismiss. (ECF No. 12.) Specifically, the Court concludes that Young Money's claims are not barred by res judicata, collateral estoppel, or the statute of limitations. However, the Court also holds that Young Money's state-law claims for violation of the UCL and for an accounting are preempted by the Copyright Act.

**IT IS SO ORDERED.**

November 15, 2012

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**